Good afternoon, Your Honor. I'm on Texas time, so I understand the lateness of the hour to me. Okay. If I could just apologize to the court briefly for a moment. I normally don't do this, but I had an injury to my left eye. I've got blood clots floating around in there. It's not obvious to y'all, but you'll notice my left eye, I close it constantly in order to try to keep from I'm not winking at anybody, and I'm not trying to be peculiar. I'm just trying to keep focus through my right eye, so I don't see these things floating around distracting my ability to read. All right. And you're? My name is Olin Dodd, Your Honor. I'm here on behalf of the petitioner appellants in the Williams v. Gerber case. Okay. Well, I don't think you need the full 20 minutes. I think you can probably just confess your arguments in this one, too. All right. Well, thank you, Your Honor. Let me just say that we're here today because the district court dismissed petitioner's third amended complaint alleging that Gerber was selling products in the state of California that were misleading and deceptive to reasonable consumers. The judge reviewing our third amended complaint went through the various allegations that we had asserted were deceptive as to the packaging and the product, and without giving the plaintiffs an opportunity to proceed with the case and do depositions and normal discovery and put on evidence, decided that the matter was not the type that would... So what was the motion? You granted a 12B... 12B6 motion on the... ...valued state of claim? Yes. Okay. Well, so, coming to the chase, this is obviously a case that presents a factual question, whether or not the advertisements at issue are likely to... Deceive. Deceive, right? Yes. And so it seems that 12B6 would not ordinarily be appropriate. That's exactly right, Your Honor. We don't believe that a 12B6 motion should have been granted in this case. The packaging, we feel, was deceptive. The product was basically gummy bears. Well, I have to tell you, my assistant purchased these things thinking they were fruit. So you might want to sit down and let's just hear from the other side as to what 12B6 should say. Thank you. You can talk afterwards if you want. I'll reserve whatever time you feel is appropriate to respond. You can respond. You have time left. But, I mean, I just don't see how 12B6 was the appropriate vehicle to dispose of this case at all. Thank you, Your Honor. Thank you. Maybe you can persuade me that it was. I think I can, Your Honor. Good afternoon, Your Honors. May it please the Court, Brian Merriman on behalf of the defendant and Apelli Gerber Products Company. If I may address Judge Wardlaw's statement, or I think statement, that a false... Observation. Observation, thank you. A false advertising Consumer Legal and Remedies Act unfair competition case involving packaging cannot be addressed or ruled on by the court on a 12B6 motion. There is ample authority in the circuit that it can be. And that's the Freeman v. Time case, Cook v. Perlis case. Now, what were the facts of those cases, though? Okay. Wasn't one of them the one where someone got a letter saying you just won a million dollars? That's the Freeman v. Time case, Your Honor. Kind of an outlier case. What's the other one you're relying on? The Cook v. Perlis, it's the name of the law firm, is a case where a law firm sued a company that was handling what the law firm considered to be legal work, you know, filling out forms, things like that. And the court said that they read the language in the ad and in the letters and said, as a matter of law, we can decide at 12B6 that a reasonable consumer is not likely to be deceived by these statements. And the same thing happened in the Freeman v. Time Inc. case. In that case, that was the one where the plaintiff receives in the mail the big, you know, the envelope that we've all received that says you won a million dollars. And the court in that case as well says you need to look at everything in context. And in context, if a reasonable consumer isn't likely to be deceived, then you can decide, you can make that decision on a 12B6 motion. In this case, Your Honor, since you made reference to it. Here you have this beautiful packaging, and it shows all this nice fruit, strawberries, raspberries, boysenberries, pieces of orange, and tells you it's rich in vitamin C. And the first thing you think of is, well, what's ever in there has got all this stuff. And that's what people look at when they go to the market and walk down the aisle with their shopping carts. But then you look here under the fine print, and you see we're talking about ingredients, corn syrup, sugar, with white grape juice from concentrate. That's the end of it. There's no berries, and raspberries, and orange, and all that. Your Honor, the district court ruled on precisely the two issues that Your Honor has raised, the images and the rich in vitamin C statement on two different grounds, both of which independently support affirmance of the district court's opinion, if I may. The first ground for ruling on those two issues, which was not addressed in the opening brief and therefore has been waived on appeal, is federal preemption. The rich in vitamin C statement is specifically allowed by the FDCA under the FDA regulations. The company is allowed to say that a product is, quote, rich, close quote, in vitamin C if it has 20 percent of that vitamin in the product. And here, there is 20 percent vitamin C in the product. So the court correctly, the district court correctly held that that statement that Your Honor raised was preempted under FDA regulations. If there was preemption, it didn't preempt the whole complaint. I'm not sure there is preemption, but if there is preemption, it could only have possibly preempted that aspect of the complaint that is specifically approved by the FDA. That's correct, Your Honor. If I may. Well, the rest of those representations weren't specifically approved by the FDA. If I may, I can address each of the five statements on which Gerber was sued. The one has to do with what Justice Fragerson raised, which is preemptive. And that issue, by the way, Your Honor, was not raised in the opening brief and has been waived. The other issue. That would be a pure question of law, which we could consider whether or not it was preemptive. We can consider it. That's correct, Your Honor. As to the images, Your Honor, the district court observed correctly that these aren't images, other than strawberries, aren't images of fruit. They're images of fruit candy and gumdrops. And that's why, Your Honor, we submitted the actual packaging. Isn't that a question of fact? I mean, to me, it doesn't look like fruit candy and gumdrops. To me, it looks like fruit. If I may, Your Honor, even under the FDCA, the FDA regulations, this was the second ground for dismissing the claim with respect to the images. There were two. And the first one was the district court ruled as a matter of law that a reasonable consumer would not likely be deceived by. Are you saying I'm not a reasonable consumer? My assistant isn't? Because it looks to me like fruit. If I may, Your Honor, there are regulations on point that the United States government has enacted regulations. And if I may finish, the government has also said that Gerber is allowed to put images of fruit under the FDA regulations, images of fruit in a product if it says above it, fruit juice snacks naturally flavored. If they're called snacks and the word's naturally flavored, which is a true statement, unopposed, then the company is allowed under the FDA regulations to put images of actual fruit. So it doesn't really matter whether a reasonable consumer would not be able to tell whether they were images of candy and gumdrops. What's the natural flavor here? I'm sorry? What's the natural flavor here? The natural flavors, Your Honor, are of the fruits depicted. Well, all we have here, corn syrup, sugar, white grape juice from concentrate. If you read... I don't see any grapes there. It says natural flavors about halfway down the list of ingredients. Where? Seven lines down. It says natural flavors, citric acid on that line, about halfway down the list of ingredients. Corn starch, natural flavors, citric acid, hydrogenated coconut oil. Yes, Your Honor. Red cabbage, paprika, beeswax. The more I read, the more appetizing this gets. Your Honor, this is intended to be a snack. That's the whole point. It's a treat. It's not a meal. It's not advertised that way. And if I may just return to the... Do you have children? I'm just curious. Yes, Your Honor. My children, walking down, looking at this, would look at... I would think... I'm always looking for the healthy stuff with real fruit that's a snack, as opposed to candy or something that's got all these sugars in it. And this would be something that, if it was really fruit, it would be a very appetizing thing to purchase for kids. And, Your Honor, it's not advertised as a fruit. It's advertised as a fruit juice snack. And if I may return, Your Honor, just to make this clear, the point about the images, because these are the two points that the Court has raised. Even if the Court finds that there could be a question of fact as to whether the images depict fruit or gumdrops or candy, the District Court's ruling still must be affirmed on the preemption ground because that is a basis for the District Court's ruling, and it wasn't raised on appeal in the opening brief. Well, I wouldn't keep going back to that because, you know, we're going to look at that if, you know, we can. To the preemption ground or, oh, to the fact that it wasn't raised on appeal. Yeah. I understand, Your Honor. I would urge the Court to look at the second ground for rejecting both of the points raised by the Court, which is preemption. All right. We understand your position. Thank you. Thank you, Your Honor. Thank you. I'd like to make a couple of very quick brief comments, Your Honor. My wife's grandfather died before we got married, and I never had the pleasure of meeting the gentleman, but one of her fondest memories was every time she visited her grandfather, he gave her lifesavers. She associated lifesavers with love and attention from a grandfather that she only got to see a couple of weeks a year at the most. And while lifesavers are candy and certainly enjoyable, and I know as a child I certainly loved sweets and sugar and candy, and it has a merit of its own, the fact that these products are marketed as something other than candy is obvious to any intelligent observer and any reasonable consumer, and it is a fact that Gerber has tried to hide and obfuscate as best they could. Frankly, I'm not quite sure how you can tell a depiction of a gumdrop, how that gumdrop thing got in there, I don't know. But they don't look like gumdrops to me on the packaging. It looks like fruit. I'm not quite sure what a gumdrop is supposed to be flavored like. If the representation on the front of the package is, as Gerber says, a representation of the flavors of a thing, then a gumdrop is a colored dot on the front of that package, and it doesn't represent a flavor, it represents candy. So that whole argument of gumdrop seems a little obscure to me. Well, did you do the opening brief here, did you? Unfortunately, I did. Well, it was unfortunate. And you're fortunate that you had the California Attorney General and a public interest group here file an amicus brief. That's right. They did a very good job on it. Yeah, they did a good job. You didn't do a very good job. That's right, Your Honor. What should we say about your marketing? In my defense, Your Honors, I'm a Texas lawyer practicing in Texas and was called upon to help work on a brief. It doesn't matter that I was not as fully versed on California law as I should have been when I did that. But let me just mention... You've got to read your briefs, you've got to get them edited, you've got to make them clear. That's what you've got to do. Yes, Your Honor. Don't come in here and say you're a Texas lawyer. Well, the fact is as it was. After that, I started grabbing for my wallet in my back pocket. Let me just mention that on the preemption issue... Well, we can look into that ourselves. We don't need any help on that. Unless there are any other questions, I have nothing else to offer, Your Honor. All right. Okay, where are you from in Texas? Beaumont. Where? A little town called Beaumont. It's about 80 miles east of Houston. Oh, Beaumont, yes. One of my ex-stints is from Texas. I'm sorry? One of my ex-stints is from Texas. We talk about Texas all the time. All right. We're about ready to give it back to Mexico. There are parts of it that may be on their way there already. They are. That's all right with me. Okay, thanks. Thank you. The only thing that you did I enjoyed. I looked over there. I thought you were asleep, you see. I know. I know, too. My eyes closed. Yeah, I know. It's unfortunate. Both eyes are open, and it's not as bad today as it was the last time. How did you hurt your eye? No one knows. I don't know. They say trauma caused it. I had a cataract operation about a year ago, and they say it sometimes happened after that. The jelly-like substance that's inside the eye detached from the back, and it caused bleeding. They say it can happen from trauma, but nobody knows what caused it. All I know is late Friday evening, I started having these things swimming around in my eyes. Well, have you seen an ophthalmologist? Have you ever seen an ophthalmologist? Well, we'll see another one. We've got a good one down here. Really? Yeah, yeah. Dr. Ryasich. Tell him I sent you. We love it. Yeah, we love it. We love it. We're very happy to be here. All right. Thank you. We'll recess until tomorrow morning.
judges: Pregerson, Wardlaw, Archer